UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MAUREEN A. PENDERGAST,

      Plaintiff,

v.                                  Case No:   2:15-cv-221-FtM-29MRM

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

---

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

      This cause is before the Court on Plaintiff Maureen Pendergast's Complaint (Doc. 1) filed on April 6, 2015.   Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability, disability insurance benefits, and supplemental security income.   The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions.[1]   For the reasons set forth herein, the Court respectfully recommends that the Commissioner's decision be **affirmed** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

---

[1]  In Plaintiff's Brief, Plaintiff "moves the Court to enter summary judgment."   (Doc. 22 at 1)  The judicial role in social security matters is governed by 42 U.S.C. § 405(g).   The standard of review pursuant to 42 U.S.C. § 405(g) is set forth in this Report and Recommendation.   Thus, the Court will follow the standard as set forth in 42 U.S.C. § 405(g) rather than a typical standard for summary judgment.

## I.      Social Security Act Eligibility, the ALJ Decision, and Standard of Review

### A.      Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work or any other substantial gainful activity that exists in the national economy.   42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.   Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

### B.      Procedural History

On July 3, 2012, Plaintiff filed an application for disability insurance benefits and for supplemental security income asserting an onset date of April 26, 2012.   (Tr. at 103-04, 131-32, 216-25).   Plaintiff's applications were denied initially on September 6, 2012, and on reconsideration on November 29, 2012.   (Tr. at 103-04, 131-32).   A hearing was held before Administrative Law Judge ("ALJ") Charles Woode on October 24, 2013.   (Tr. at 43-61).   The ALJ issued an unfavorable decision on November 15, 2013.   (Tr. at 25-35).   The ALJ found Plaintiff not to be under a disability from April 26, 2012, through the date of the decision.   (Tr. at 34).

On February 5, 2015, the Appeals Council denied Plaintiff's request for review.   (Tr. at 1-6).   Plaintiff filed a Complaint (Doc. 1) in the United States District Court on April 6, 2015. This case is ripe for review.

### C.   Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that she is disabled.   *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[2]   An ALJ must determine whether the claimant:   (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform her past relevant work; and (5) can perform other work of the sort found in the national economy.   *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).   The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five.   *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that Plaintiff met the insured status requirements through March 31, 2014.   (Tr. at 27).   At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 26, 2012, the alleged onset date.   (Tr. at 27).   At step two, the ALJ found that Plaintiff suffered from the following severe impairments: seizure disorder, Chiari Malformation I, anemia, and borderline intellectual functioning.   (Tr. at 27).   At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526,

---

[2]  Unpublished opinions may be cited as persuasive on a particular point.   The Court does not rely on unpublished opinions as precedent.   Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P.   Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules.   11th Cir. R. 36-2.

416.920(d), 416.925 and 416.926).   (Tr. at 28).   At step four, the ALJ determined that Plaintiff

has the residual functional capacity ("RFC") to perform:

> a full range of work at all exertional levels but with the following non-exertional limitations:   she can occasionally climb ladders, ropes, and scaffolds, and should avoid concentrated exposure to environmental irritants and hazards, including unprotected heights and dangerous machinery.   The claimant is able to understand, remember, and carry out simple instructions, perform simple routine tasks in low-production settings, and can maintain occasional or superficial interactions with the public.

(Tr. at 29-30).   The ALJ determined that Plaintiff was unable to perform any past relevant work.

(Tr. at 33).   Considering Plaintiff's age, education, work experience, and RFC, the ALJ

determined that there are jobs that exist in significant numbers in the national economy that

Plaintiff is capable of performing.   (Tr. at 33).   After considering the vocational expert's

testimony, the ALJ found that Plaintiff was able to perform the jobs of truck driver helper (DOT

# 905.697-010), hand packager (DOT # 920.587-018), and salvage laborer (DOT # 929.687-

022).[3]   (Tr. at 34).   The ALJ concluded that Plaintiff has not been under a disability from April

26, 2012, through the date of the decision.   (Tr. at 34).

### D.   Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the

correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether

the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390

(1971).   The Commissioner's findings of fact are conclusive if supported by substantial

evidence.   42 U.S.C. §405(g).   Substantial evidence is more than a scintilla; *i.e.*, the evidence

must do more than merely create a suspicion of the existence of a fact, and must include such

relevant evidence as a reasonable person would accept as adequate to support the conclusion.

---

[3] "DOT" refers to the *Dictionary of Occupational Titles*.

*Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision.   *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); and *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).   The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.   *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II.    Analysis

On appeal, Plaintiff raises the following three issues:

1)      The ALJ erred in finding that Plaintiff's headaches are a non-severe impairment.

2)      The ALJ's assessment that Plaintiff has the residual functional capacity to perform work at all exertional levels is not based on substantial evidence.

3)      The ALJ improperly discredited Plaintiff's claim of disability based on a lack of treatment and did not properly analyze whether Plaintiff's inability to obtain such treatment was justified due to a lack of finances.

(Doc. 22 at 3).   The Court will consider each issue in turn.

### A.  Headaches

Plaintiff asserts that the ALJ erred in failing to consider Plaintiff's chronic headaches as a severe impairment.   Plaintiff argues that her headaches would significantly limit Plaintiff's ability to perform basic work activity.   The Commissioner responds that the ALJ never made a finding that Plaintiff's headaches were not severe or that the headaches caused only minimal

limitation in her ability to work.   The Commissioner contends that the ALJ considered

Plaintiff's headaches throughout the decision as a symptom of Plaintiff's Chiari Malformation I.

At step two, "[a]n impairment is not severe only if the abnormality is so slight and its

effect so minimal that it would clearly not be expected to interfere with the individual's ability

to work, irrespective of age, education or work experience."   *McDaniel v. Bowen*, 800 F.2d

1026, 1031 (11th Cir. 1986).   A severe impairment must bring about at least more than a

minimal reduction in a claimant's ability to work, and must last continuously for at least twelve

months.   *See* 20 C.F.R. §§ 404.1505(a).   This inquiry "acts as a filter" so that insubstantial

impairments will not be given much weight.   *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir.

1987).   While the standard for severity is low, the severity of an impairment "must be

measured in terms of its effect upon ability to work and not simply in terms of deviation from

purely medical standards of bodily perfection or normality."   *McCruter v. Bowen*, 791 F.2d

1544, 1547 (11th Cir. 1986).

According to the Eleventh Circuit, "[n]othing requires that the ALJ must identify, at

step two, all of the impairments that should be considered severe," but only that the ALJ

considered the claimant's impairments in combination, whether severe or not.   *Heatly v.

Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010).   If any impairment or

combination of impairments qualifies as "severe," step two is satisfied and the claim advances

to step three.   *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing

*Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)).

In this case, the ALJ did not list headaches as a severe impairment at step two of the

sequential evaluation.   (Tr. at 27).   As stated above, the ALJ found that Plaintiff had the severe

impairments of seizure disorder, Chiari Malformation I, anemia and borderline intellectual

functioning.   (T. at 27).   Even if the ALJ erred in failing to list Plaintiff's headaches as a severe impairment, the error may be harmless if the ALJ considered Plaintiff's severe and non-severe impairments in combination in reaching an RFC determination.   *Gray*, 550 F. App'x at 854 (holding that even if ALJ failed to include a severe impairment at step two, the error was harmless if the ALJ considered all impairments whether severe or not, at step three and in assessing claimant's RFC).

Upon review the decision, the Court finds that the ALJ considered Plaintiff's headaches in combination with other impairments at step three of the sequential evaluation.   The ALJ referred to Plaintiff's complaints of headaches in her pain questionnaire and to her testimony at the hearing that she suffered from daily headaches.   (Tr. at 30).   The ALJ noted that Plaintiff's headaches improved with medication.   (Tr. at 30).   The ALJ also noted that Plaintiff treated her headaches successfully with over-the-counter Motrin or other analgesics rather than prescribed medications.   (Tr. at 31, 32).   When indicating that he considered all of Plaintiff's symptoms, the Court finds that the ALJ considered Plaintiff's complaints of headaches in combination with Plaintiff's other medical conditions.   (Tr. at 30, 32).   Accordingly, even if the ALJ erred in failing to find Plaintiff's headaches severe, the error was harmless because:   (1) the ALJ found Plaintiff to have other severe impairments; and (2) the ALJ considered Plaintiff's headaches in combination with her severe and non-severe impairments.   Thus, the ALJ's decision is supported by substantial evidence as to this issue.

### B.  Residual Functional Capacity

Plaintiff asserts that she is significantly more limited than the ALJ found in the RFC. Plaintiff claims that the ALJ failed to support his conclusion that Plaintiff is able to perform work at all exertional levels with some limited restrictions.   Plaintiff argues that the RFC is not

supported by substantial evidence, asserting that a "reasonable person would accept such relevant evidence as adequate to support the conclusion that this Plaintiff is more limited than medium work as the ALJ presented in his RFC."[4]   (Doc. 22 at 11). In addition, Plaintiff asserts that the ALJ substituted his judgment for that of the physicians.

The Commissioner responds that Plaintiff set forth the wrong standard of review.   The Commissioner contends that the standard that a reasonable person would find the evidence of record adequate to show she is more limited than found in the RFC is the incorrect standard. Rather, the correct standard is whether the ALJ's decision is supported by substantial evidence. Furthermore, the Commissioner asserts that the ALJ's RFC findings were supported by substantial evidence.

At the fourth step in the evaluation process, the ALJ is required to determine a claimant's RFC and, based on that determination, to decide whether the claimant is able to return to his or her previous work. *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).   The determination of a claimant's RFC is within the authority of the ALJ and along with the claimant's age education, and work experience, the RFC is considered in determining whether the claimant can work. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).   The RFC is the most a plaintiff is able to do despite her physical and mental limitations.   20 C.F.R. § 404.1545(a)(1).   In determining whether Plaintiff can return to her past relevant work, the ALJ

---

[4] Plaintiff mentions that she is more limited "than medium work as the ALJ presented in his RFC."   (Doc. 22 at 11).   The record fails to reflect that the ALJ limited Plaintiff to medium work.   In the RFC, the ALJ found that Plaintiff had the residual functional capacity "to perform a full range of work at all exertional levels" with some restrictions.   (Tr. at 29).   The Court will assume Plaintiff meant that she was more limited than being able to perform work at all exertional levels.

must determine the Plaintiff's RFC using all of the relevant medical and other evidence in the record.  *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th Cir. 2004); 20 C.F.R. § 404.1520(e).

Although Plaintiff asserts that the ALJ failed to support the RFC finding in his decision, the ALJ specifically states that he based the "residual functional capacity [] in large part on the opinions of Drs. Waldman and Ragsdale, the medical and psychological consultants from the Disability Determination Service, respectively."   (Tr. at 32, 107-18).   The ALJ noted that Dr. Waldman opined that Plaintiff required hazard precautions due to her history of seizures, and Dr. Ragsdale opined that Plaintiff was capable of simple, repetitive tasks, in low production settings with limited social demands.   (Tr. at 32-33).

Kevin Ragsdale, Ph.D. is a non-examining psychologist who evaluated Plaintiff's records on November 27, 2012.   (Tr. at 112).   Dr. Ragsdale completed a Mental Residual Functional Capacity Assessment for Plaintiff.   (Tr. at 114).   Generally, Dr. Ragsdale found Plaintiff to have understanding and memory limitations.   (Tr. at 114).   Specifically Dr. Ragsdale determined that Plaintiff was not significantly limited in most areas, with the exception of being moderately limited in the ability to understand and remember detailed instructions.   (Tr. at 114-15).   Dr. Ragsdale concluded Plaintiff should be able to understand and remember very short and simple instructions.   (Tr. at 114-15).

Focusing on limitations as to sustained concentration and persistence, Dr. Ragsdale found Plaintiff not to be significantly limited in most areas.   (Tr. at 115)   Dr. Ragsdale also found Plaintiff to be moderately limited in the ability:   (1) to carry out detailed instructions; and (2) "to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."   (Tr. at 115).   Dr. Ragsdale concluded that Plaintiff should be able to perform simple,

- 9 -

routine tasks in a low production setting under normal amounts of supervision.   (Tr. at 115). Further, Dr. Ragsdale found Plaintiff's ability to perform complex tasks may be moderately limited due to a low IQ and associated deficits in working pace and processing speed.   (Tr. at 115).

In the area of social interaction, Dr. Ragsdale determined Plaintiff was not significantly limited in most areas with the exception of being moderately limited in the ability to interact appropriately with the general public.   (Tr. at 115-16).   Dr. Ragsdale concluded that Plaintiff appears to have adequate interpersonal skills, but due to reported isolative tendencies, he found Plaintiff better suited for work with limited social demands.   (Tr. at 116).

Arthur Waldman, M.D. completed a Physical Residual Functional Capacity Assessment on November 29, 2012.   (Tr. at 114).   Dr. Waldman found Plaintiff to have no exertional, manipulative, visual, and communicative limitations.   (Tr. at 113).   As to postural limitations, Dr. Waldman determined Plaintiff had no postural limitations other than climbing ladders, ropes and scaffolds occasionally.   (Tr. at 113).   Due to a history of asthma and seizures, Dr. Waldman found Plaintiff must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and hazards.   (Tr. at 113-14).   Dr. Waldman found no other environmental limitations. (Tr. at 114).

The ALJ properly summarized Dr. Ragsdale's and Dr. Waldman's opinions and their findings as to Plaintiff's mental and non-exertional limitations.   (Tr. at 32-33).   The ALJ included their findings in formulating Plaintiff's RFC.   (Tr. at 29-30).   Specifically, it bears repeating that the ALJ limited Plaintiff to:   (1) occasionally climbing ladders, ropes, and scaffolds; (2) avoiding concentrated exposure to environmental irritants and hazards; (3) performing only simple routine tasks in a low-production setting; and (4) maintaining occasional

or superficial interactions with the public.   (Tr. at 29-30).   These limitations stem directly from the reports of Dr. Ragsdale and Dr. Waldman.   Moreover, Plaintiff fails to indicate or cite to any medical records that contradict the opinions of Dr. Ragsdale or Dr. Waldman.   Thus, the ALJ accurately relied on Dr. Ragsdale's and Dr. Waldman's medical opinions in formulating Plaintiff's RFC.

In addition to relying on Dr. Ragsdale's and Dr. Waldman's opinions, the ALJ also considered the evidence of record.   (Tr. at 30).   As to medical evidence, the ALJ considered medical evidence prior to the onset date, beginning in 2007 with her first seizure, through other medical evidence concerning seizures in 2010, and medical evidence of seizures between March 2012 and May 2013.   (Tr. at 31).   The ALJ reviewed Allen Bezner, M.D.'s Neurologic Consultation in January 2013, in which he found Plaintiff suffered from probable temporal lobe seizures, and prescribed the anti-convulsant medication, Keppra.   (Tr.at 31, 436-37).   The ALJ noted that Plaintiff had not appeared for any follow-up appointments for her seizure disorder, and was last seen in the hospital for seizure activity in May 2013, in part due to her failure to take her anti-seizure medication as prescribed.   (Tr. at 31).   Upon review of Plaintiff's activities of daily living, the ALJ took into account that Plaintiff cared for her own personal needs, performed an array of household tasks, drove, shopped, and kept in touch with family and friends.   (Tr. at 32).

The ALJ concluded that Plaintiff was able to perform work at all exertional levels, and included non-exertional limitations that were substantially supported by the evidence of record. This RFC finding is derived from and supported by the opinions of Dr. Ragsdale and Dr. Waldman.   The ALJ did not substitute his judgment for that of the medical experts, but instead

relied on their opinions to determine Plaintiff's RFC.   Thus, the ALJ's RFC finding is supported by substantial evidence and the ALJ did not err in the RFC determination.

### C.  Ability to Afford Treatment

Plaintiff argues that the ALJ should not have held non-compliance with medical treatment against Plaintiff because of her financial circumstances.   Plaintiff claims that the ALJ found that Plaintiff's treatment records do not lend support to the assertion of a disabling condition because she only sporadically sought medical treatment and was non-compliant with taking her medications.   Plaintiff argues that the ALJ created a "negative inference" regarding Plaintiff's disability determination because of her inability to obtain medical treatment.   (Doc. 22 at 13).   Plaintiff asserts that she needs other people to buy her medications for her because she is no longer working.   Further, the family member who was buying the medications, Plaintiff's aunt, is now unable to afford to continue buying Plaintiff's medications.   (Doc. 22 at 13; Tr. at 48, 49).

The Commissioner responds that the ALJ based his decision on medical and other evidence in the record.   The Commissioner contends that the ALJ considered Plaintiff's activities, the lack of any restrictions from Plaintiff's treating and examining physicians, and the opinions of Dr. Waldman and Dr. Ragsdale in which they found Plaintiff able to perform work as described in the RFC.   Moreover, the Commissioner argues that Plaintiff never told her physicians that she was unable to afford her medications or treatment even when they noted she was non-compliant with taking her medications.   In addition, the Commissioner contends that the ALJ found that Plaintiff was non-compliant with taking her medications even when she was working and was able to afford them.

The evidence in the record that Plaintiff has difficulty affording her medications occurred at the hearing.   Plaintiff testified:

> [t]he reason why the record you probably have there shows lack of me taking my medication is due to the fact that I have to get other people to buy my medication for me.   I have no job.   And between my auntie being on a fixed income and taking care of my 16-year-old cousin, she has to try to provide all the medical stuff for me plus my medication.   So I don't have – you know, my mom passed away when I was a child.   So as far as parents I don't have no one to depend on but my auntie.

(Tr. at 48-49).

The Eleventh Circuit held that "'refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability,'" but "'poverty excuses noncompliance.'" *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (quoting *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988)).   When an ALJ relies on noncompliance with prescribed medical treatment as the "sole ground for the denial of disability benefits," and the record contains evidence that a plaintiff was unable to afford the prescribed medical treatment, then the ALJ must determine whether a plaintiff could afford the prescribed medical treatment.   *Id.*   If a court determines that the failure to follow prescribed medical treatment is not one of the "principal factors in the ALJ's decision," then the ALJ is not required to delve into a plaintiff's ability to pay, and this failure is not reversible error.   *Brown v. Comm'r of Soc. Sec.*, 425 F. App'x 813, 817 (11th Cir. 2011).   If the failure to follow prescribed medical treatment is a substantial factor in an administrative law judge's decision to discredit a plaintiff's credibility, then the ALJ should inquire further as to whether a plaintiff was able to afford the prescribed medical treatment before holding noncompliance against a plaintiff.   *Moffatt v. Comm'r of Soc. Sec.*, No. 8:13-CV-2853-T-36EAJ, 2015 WL 1038014, at *4 (M.D. Fla. Mar. 10, 2015).

Here, the ALJ mentions that Plaintiff had been non-compliant with her prescribed anti-seizure medication in 2010, and again in March 2012 and May 2013.   (Tr. at 31, 32).

Moreover, the ALJ noted that Plaintiff only sought medical care sporadically, and her symptoms improved when compliant with taking her medications.   (Tr. at 32).   The ALJ considered Plaintiff's non-compliance with taking her medications as a factor in determining that Plaintiff was not entirely credible and, thus, not disabled.   (T. at 32).   The ALJ concluded that Plaintiff's "documented non-compliance with recommended treatment modalities and failure to follow up with her medical specialists as directed indicates that her symptoms are not as disabling as purported."   (Tr. at 32).

Plaintiff argues that the ALJ "clearly creates a negative inference regarding Plaintiff's disability determination and her inability to receive medical treatment."   (Doc. 22 at 13).   However, the standard is that the noncompliance with prescribed medical treatment due to an inability to afford them must be a sole, principal, or substantial factor in the ALJ's decision to find a plaintiff not disabled.   *See Brown v. Comm'r of Soc. Sec.*, 425 F. App'x at 817, *Moffatt v. Comm'r of Soc. Sec.*, 2015 WL 1038014, at *4.   In this case, lack of compliance with taking medications is just one factor that the ALJ considered in rendering his decision.   The ALJ also considered other factors as well.

First, in determining Plaintiff's credibility, the ALJ considered the medical evidence concerning Plaintiff's treatment.   As noted by the ALJ, Plaintiff did not take her medications and was non-compliant even when she was working, and could afford her medications.   (Tr. at 32, 279).   In addition, the ALJ noted that Plaintiff received "minimal conservative treatment from certain primary care practitioners as to her headaches and seizures," illustrating that her conditions were not as severe as Plaintiff claimed.   (Tr. at 32).

Second, the ALJ considered Plaintiff's work history and medical records mentioning work.   On her last visit to Hendry Family Care Center in February 2012, Plaintiff requested a

note to return to work while acknowledging that she continued to have seizures.   (Tr. at 31-32, 342).   Moreover, the ALJ found that Plaintiff's work history did not support her allegations of a disabling conditions because the evidence indicated that Plaintiff stopped working for reasons unrelated to her alleged disabilities.   (Tr. at 32).   The ALJ noted that Plaintiff testified she was fired in April 2012 for absenteeism due to a lack of transportation.   (Tr. at 32).   Furthermore, the ALJ noted that Plaintiff applied for and received unemployment compensation benefits indicating that she did not cease working because of her limitations, and considered herself able to work.   (Tr. at 32).

Third, the ALJ considered Plaintiff's activities of daily living when compared to Plaintiff's testimony as to her limitations.   Plaintiff claimed that she was very limited in her activities of daily living, but the ALJ found the record did not support Plaintiff's claims.   The ALJ acknowledged that Plaintiff claimed that she was able to care for her personal needs, but was unable to assist in household tasks, with the exception of taking out the garbage.   (Tr. at 31).   By contrast, the ALJ cited to the report by Plaintiff's girlfriend, Sheadrika Johnson, who completed a third-party function report, stating that Plaintiff was able to handle her personal care, was able to cook, clean, and help with the household chores.   (Tr. at 30).   Another inconsistency indicated by the ALJ was that Plaintiff claimed she not allowed to cook, yet her employment history included a job as a cook.   (Tr. at 31).   The ALJ considered Plaintiff to have an extensive range of daily living activities that belied Plaintiff's allegations of disabling symptoms.   (Tr. at 32).

Although the ALJ noted non-compliance with medications, the ALJ also found other reasons to find Plaintiff not entirely credible.   In the decision, the ALJ considered Plaintiff's testimony and her claimed limitations but found them not credible based on the consideration of

Plaintiff's medical evidence, work history, and activities of daily living.   Although the issue of

non-compliance with medical treatment was one factor in the ALJ's credibility determination, it

was not the sole or primary factor for denial of disability benefits in this case.   The Court finds

that the ALJ did not err in failing to inquire into Plaintiff's ability to pay, and the ALJ's opinion

is supported by substantial evidence.

### III.   Conclusion

Upon consideration of the submissions of the parties and the administrative record, the

Court finds that the decision of the ALJ is supported by substantial evidence and decided upon

proper legal standards.

**IT IS RESPECTFULLY RECOMMENDED:**

The decision of the Commissioner be **AFFIRMED** pursuant to sentence four of 42

U.S.C. §405(g).

Respectfully recommended in Chambers in Ft. Myers, Florida on July 29, 2016.


MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE



### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and

Recommendation's factual findings and legal conclusions.   A party's failure to file written

objections waives that party's right to challenge on appeal any unobjected-to factual finding or

legal conclusion the district judge adopts from the Report and Recommendation.   *See* 11th Cir.

R. 3-1.

Copies furnished to:
Counsel of Record
Unrepresented Parties